# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| MISSOURI PROTECTION & ADVOCACY SERVICES, VOZKC, Susana Elizarraraz, Manuel Rey Abarca IV, and Barbara Sheinbein; | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Case No. |
| | ) ) | |
| JOHN R. ASHCROFT, in his official capacity as the Missouri Secretary of State; Kansas City Board of Election Commissioners; St. Louis County Board of Elections; and Boone County Clerk; | ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Missouri Protection and Advocacy Services, VozKC, Susana Elizarraraz, Manuel Rey Abarca IV, and Barbara Sheinbein, by their undersigned counsel, and for their Complaint against Defendant John R. Ashcroft, in his official capacity as the Missouri Secretary of State, Defendant Kansas City Board of Election Commissioners, Defendant St. Louis County Board of Elections, and Defendant Boone County Clerk, allege as follows:

## INTRODUCTION

1. This is an action to enforce the voter assistance provisions of the federal Voting Rights Act of 1965, 52 U.S.C. § 10508 ("VRA").

2. Section 208 of the VRA provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

1

3. For voters with limited English proficiency or disabilities, Section 208 ensures meaningful access to the franchise by permitting them to have assistors to provide help with voting. *Id.*

4. Section 208 does not limit the number of voters that a third party who is not the voter's employer or agent of that employer or union officer or agent of the voter's union may assist.

5. Missouri election law ensures the right to assistance in voting to "any voter who declares . . . that he cannot read or write, is blind or has any other physical disability and cannot vote his ballot," and provides that a voter may be assisted in casting his or her ballot "by any person of his own choice." Mo. Rev. Stat. § 115.445.3.

6. However, Missouri election law then restricts voter assistance such that "[n]o person, other than election judges and members of such voters' immediate families, shall assist more than one voter at one election." *Id.*

7. Violations of § 115.445.3 can result in criminal penalties for assistors, and rejection of the voter's ballot due to unlawful assistance. *See* Mo. Rev. Stat. §§ 115.635.8, 115.291.1.

8. Section 115.445.3's voting assistance restrictions conflict with the voter assistance provisions of the VRA in that they prohibit voters from choosing a non-immediate family member assistor who has already helped any other voter during an election.

9. Section 115.445.3's voting assistance restrictions particularly burden voters with disabilities, who often rely on help from others to successfully read, mark, and cast ballots.

2

10. Section 115.445.3's voting assistance restrictions also particularly burden limited English proficient voters, who often rely on help from others to successfully read, mark, and cast English-language ballots.

11. The voter assistance restrictions in Mo. Rev. Stat. § 115.445.3 prevent community organizations, including Plaintiff organizations, from carrying out their work to promote and support access to voting and forces those organizations to divert resources away from critical tasks in order to recruit, train, and compensate additional assistors.

12. Section 115.445.3's voting assistance restrictions further burden individuals who provide voting assistance to voters with limited English proficiency and disabilities by subjecting individual assistors to criminal prosecution and penalties for exceeding the one-person limit by assisting multiple voters in any election.

13. Because they conflict with federal law and burdens the fundamental right to vote, the voter assistance restrictions in § 115.445.3 are illegal and unconstitutional.

14. Plaintiffs, two organizations that provide voting assistance for voters with limited English proficiency or disabilities, along with individuals who choose to be assistors, seek a declaration that § 115.445.3 is unconstitutional and violates the VRA and injunctive relief directing Defendants and all persons acting in concert with them to refrain from denying voters who qualify for assistance under Section 208 the assistor of their choice even if that assistor has already helped another voter.

**JURISDICTION AND VENUE**

15. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' causes of action under the laws of the Constitution of the United States.

3

16. This Court has original jurisdiction over Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C §§ 2201 and 2202.

17. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and Defendants John R. Ashcroft, in his official capacity as Missouri Secretary of State, Kansas City Board of Election Commissioners, St. Louis County Board of Elections, and Boone County Clerk conduct business in this district.

18. Divisional venue is proper in the Central Division because Defendant John R. Ashcroft is located in Cole County, Missouri, and Defendant Boone County Clerk is located in Boone County, Missouri.

**PARTIES**

19. Plaintiff Missouri Protection and Advocacy Services ("Mo P&A") is a statewide non-profit public interest law firm established in 1977 and headquartered in Jefferson City, Missouri.

20. The mission of Plaintiff Mo P&A is to protect the legal rights of individuals with disabilities through advocacy and legal services.

21. Through its Protection & Advocacy for Voting Accessibility program ("PAVA"), Plaintiff Mo P&A works to ensure the full participation of individuals with disabilities in the electoral process throughout the state of Missouri. Plaintiff Mo P&A works to remove barriers to voting for people with disabilities through systemic advocacy and individual assistance, including directly assisting individuals with disabilities in reading, marking, and casting their ballots in the polling place.

22.     Plaintiff VozKC is a volunteer organization located in Kansas City, Missouri, and founded in 2020.  Plaintiff VozKC advocates for Latino populations in Missouri and works to ensure that Latino populations in the state have political access.  Plaintiff VozKC educates Latino populations in Missouri on how to register to vote and cast a ballot; provides information on local issues and referenda; supports local candidates for election; and advocates to increase appointment of Latino officials to city and state boards.

23.     Plaintiff VozKC focuses its political access work through the northeast and west sides of Kansas City, Missouri, where the core of the Latino community lives.  Plaintiff VozKC engages about 2,000-2,500 Missourians every year through its work.

24.     Plaintiff Susana Elizarraraz is a Missouri registered voter who lives in Kansas City, Missouri.  The voting assistance restrictions expose Plaintiff Elizarraraz to criminal prosecution and penalties for assisting more than one voter who is not part of her immediate family.  This imposes greater burdens on her because Plaintiff Elizarraraz is able to assist limited English-proficient voters in reading, marking, and casting their ballots in their respective polling places.

25.     Plaintiff Manuel Rey Abarca IV is a Missouri registered voter who lives in Kansas City, Missouri.  The voting assistance restrictions expose Plaintiff Abarca to criminal prosecution and penalties for assisting more than one voter who is not part of his immediate family.  Plaintiff Abarca is able to assist limited English-proficient voters in reading, marking, and casting their ballots in the polling place.

26.     Plaintiff Barbara Sheinbein is a registered voter and resident of St. Louis County, Missouri. Plaintiff Sheinbein requires an accessible machine with headphones

and voice prompts in order to cast a secret ballot. Plaintiff Sheinbein obtained assistance from a friend, a volunteer with the League of Women Voters, to gain access to a working machine and headphones that would allow her to read and mark her ballot during the April 2022 Municipal Elections in St. Louis County. She also previously obtained assistance voting from this volunteer in prior elections in St. Louis County, including assistance reading and marking the ballot when no headphones were made available. Plaintiff Sheinbein wishes to continue to work with her chosen assistor, a volunteer with the League of Women Voters, in future elections in order to cast a secret ballot, assistance which may include ensuring an accessible machine is available and properly set up, being directed to the machine, being provided headphones, and, if no accessible machine can be made available, assistance reading and marking the ballot. The voting restrictions prohibit Plaintiff Sheinbein from working with her friend and chosen assistor if this person has helped someone else, and expose her assistor to criminal prosecution and penalties for assisting more than one person.

27.    Defendant John Ashcroft is the Secretary of State of Missouri and is sued in his official capacity.  He is the chief election official of the State of Missouri and is responsible for implementation of all laws related to voting and providing guidance related to those laws to local election authorities, including Mo. Rev. Stat. § 115.445.  In his capacity as Secretary of State, Defendant Ashcroft oversees the State's Elections Division, which is responsible for administering all statewide elections and making known the rules governing elections and electronic voting systems.  Defendant follows and implements Missouri's election law.

28.     The Kansas City Board of Election Commissioners serves the voters of Kansas City within Jackson County. The St. Louis County Board of Elections serves the voters of St. Louis County. The Boone County Clerk serves the voters of Boone County. These Defendants, in addition to conducting local, state, and federal elections, are responsible for registering voters, supervising election personnel, complying with state election law, and maintaining voter registration records. *See* Mo. Sec'y State, *Elections & Voting*, https://www.sos.mo.gov/elections.

29.     The Kansas City Board of Election Commissioners, the St. Louis County Board of Elections, and the Boone County Clerk are responsible for, among other duties, ensuring compliance with all legal requirements relating to the conduct of elections, including supervising judges to compel compliance with the provisions challenged by Plaintiffs. Mo. Rev. Stat. § 115.099 ("Each election authority shall have authority to direct judges in their duties and to compel compliance with the law.")

30.     In past published training materials, Missouri has tasked poll workers supervised by local election boards with ensuring that "[n]o one other than election judges or immediate family may assist more than one voter." *Missouri Poll Worker's Guide: A Guide for Election Judges* 36, Missouri Secretary of State Elections Division, (last accessed Mar. 17, 2022, 4:16 PM), https://web.mit.edu/supportthevoter/www/files/2013/08/Missouri-2008-Poll-Worker-Guide.pdf.

7

**FACTS**

31.     Missouri held General Municipal Elections on April 5, 2022, and will hold a statewide Primary Election on August 2, 2022, and a statewide General Election on November 8, 2022.

32.     Missouri does not offer early generalized pre-Election Day in-person voting.

33.     The 2022 Missouri statewide ballot will include elections for the offices of U.S. Senator, U.S. Representative, State Senator, State Representative, State Auditor, Justices of the Missouri Supreme Court, and intermediate appellate court judges, along with local office and ballot measures.

34.     Each year, thousands of immigrants in Missouri become naturalized U.S. citizens and become eligible to vote. Over 4,000 Missouri residents were naturalized during fiscal year 2020. Dep't Homeland Sec., *Profiles on Naturalized Citizens: 2020 State*; https://www.dhs.gov/profiles-naturalized-citizens-2020-state.

35.     Approximately 125,000 Hispanic voters, 2.7% of Missouri's eligible voting population, were eligible to vote in Missouri in 2020. Pew Rsch. Ctr., *Mapping the Latino Electorate*, https://www.pewresearch.org/hispanic/interactives/mapping-the-latino-electorate/iframe/.

36.     As of 2020, there are 194,360 citizens eighteen years of age and older in Missouri who speak a language other than English, and 361,104 people out of Missouri's population of 5,392,010 (6.3 percent) speak a language other than English.  U.S. Census Bureau, S1601 Language Spoken at Home 2020, https://data.census.gov/cedsci/table?q=spanish&g=0400000US29&y=2020&tid=ACSST5Y2020.S1601.

37. Further, although the "overall population in the St. Louis Region has barely budged in the past 10 years," there has been "robust growth in minority communities, particularly Latinos." Eric Schmid and Brian Munoz, *The St. Louis Region Is Already Home For Many Latinos and More Are Moving Here*, St. Louis Pub. Radio (Nov. 16, 2021), https://news.stlpublicradio.org/culture-history/2021-11-16/the-st-louis-region-is-already-home-for-many-latinos-and-more-are-moving-here.

38. Latinos saw a nearly 50% growth in population across the fourteen-county St. Louis region since 2010, adding about 35,000 people. *Id.*

39. In order to vote, many limited English proficient voters, including members of the Missouri Latino community, require assistance reading, marking, and casting their English-language ballots. Although some jurisdictions in the United States are required by federal law to provide election materials and voter assistance in languages other than English, none of these jurisdictions are located in the state of Missouri. U.S. Dep't Com., Voting Rights Act Amendments of 2006, *Determinations Under Section 203*, https://www.justice.gov/crt/file/927231/download. Therefore, Missouri polling sites are not required to and do not provide information to voters about voting in languages other than English, thereby making voter assistance all the more valuable for those populations with limited English proficiency.

40. Approximately 848,000 persons with disabilities, 18.6% of Missouri's eligible voting population, were projected to be eligible to vote in Missouri in 2020. Dr. Lisa Schur and Dr. Douglas Kruse, *Projecting the Number of Eligible Voters with Disabilities in the November 2020 Election*, Rutgers Program for Disability Rsch., 1, 13 (Sept. 24, 2020),

9

https://smlr.rutgers.edu/sites/default/files/Documents/Centers/Program_Disability_Resear ch/Disability_electorate_projections_2020.pdf.

41. Plaintiffs Missouri Protection and Advocacy Services, VozKC, Susana Elizarraraz, and Manuel Rey Abarca IV offer assistance at polling places across Missouri.

42. Plaintiff Mo P&A has assisted and will assist voters with disabilities in casting their ballots in the upcoming 2022 Primary and General Elections.

43. Plaintiff VozKC has assisted and will assist limited English proficient voters in casting their ballots in the upcoming 2022 Primary and General Elections.

44. Plaintiff Elizarraraz has assisted and will assist voters who are limited English proficient to vote in the upcoming 2022 Primary and General Elections.

45. Plaintiff Abarca has assisted and will assist voters who are limited English proficient to participate in the upcoming 2022 Primary and General Elections.

46. Staff Attorneys and Advocacy Specialists of Plaintiff Mo P&A have accompanied voters with disabilities into the polling place to provide assistance to voters with checking in, receiving the ballot, and reading, marking, casting and submitting the ballot.

47. Staff and volunteers of VozKC accompany voters with limited English proficiency into the polling place where they provide assistance to the voters with checking in, receiving the ballot, and reading, comprehending, marking, casting and submitting their ballot.

48. Plaintiff Sheinbein has obtained assistance with voting in the past and wishes to work with her chosen assistor in future elections.

**RELEVANT LAW**

49. The VRA establishes the right of voters with limited English proficiency and voters with disabilities to have an assistor of their choice help them vote, so long as the assistor is not the voter's employer or union representative. *See* 52 U.S.C. § 10508.

50. In Section 208, Congress recognizes that voters who cannot not read or write in English need assistance in voting. The 1982 Senate Committee Report on the extension of the Voting Rights Act stated with respect to Section 208: "Certain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting including aid within the voting booth. These groups include the blind, the disabled, and those who either do not have a written language or *who are unable to read or write sufficiently well to understand the election material and the ballot*." (emphasis added). S. Rep. 97–417, 62 (1982), reprinted in 1982 U.S.C.C.A.N. 177, 240.

51. Frustrating the federal mandate guaranteeing a right to assistance to voters, the Missouri election code imposes voter assistance restrictions, which make it a third-degree election offense and a misdemeanor to assist more than one voter other than an immediate family member.

52. In Missouri penalties for voting-relating offenses include imprisonment of up to one year and/or a fine of up to $2,500 if an individual enters a voting booth or compartment except as specifically authorized by law. Mo. Rev. Stat. § 115.635.8.

53. The relevant statutes are:

    i. Mo. Rev. Stat. § 115.445.3 provides that "If any voter declares under oath to the election judges that he cannot read or write, is blind or has any other physical disability and cannot vote his ballot, he may be assisted by the

election judges or by any person of his own choice other than a judge. If the voter asks for the assistance of election judges, two judges of different political parties shall go to the voting booth and cast his vote as he directs. If the voter asks for the assistance of someone other than election judges, the assistant shall go to the voting booth with the voter and cast his vote as he directs. *No person, other than election judges and members of such voters' immediate families, shall assist more than one voter at one election.*" (emphasis added).

ii.  Mo. Rev. Stat. § 115.635.8 provides that "[e]ntering a voting booth or compartment except as specifically authorized by law" is a class three election offense and a misdemeanor.

iii. Mo. Rev. Stat. § 115.115.5 provides that "polling place[s] shall otherwise be staffed and operated in accordance with law, especially as provided in . . . section 115.445[.3]."

iv. Mo. Rev. Stat. § 115.447.2(2) defines a rejected ballot as "any ballot on which no votes are counted because . . . the ballot was voted with unlawful assistance."

v.  Mo. Rev. Stat. § 115.291.1 provides that if "it is ascertained that any absentee ballot was voted with unlawful assistance, the ballot shall be rejected."

54.    Plaintiffs Missouri Protection and Advocacy Services, VozKC, Susana Elizarraraz, and Manuel Rey Abarca IV and/or their representatives must either limit the number of voters whom they help to one or risk criminal prosecution and penalties.

55. The voting assistance restrictions prevent Plaintiffs and other individuals and organizations from organizing efforts to help voters who may need voting assistance—as any assistor would have to stop after helping just one voter or risk violating the law.

56. The Missouri voter assistance restrictions would require the Kansas City Board of Election Commissioners, the St. Louis County Board of Elections, and the Boone County Clerk to train and instruct individual poll workers to prohibit a person from assisting a voter if the person had already assisted another voter.

**ORGANIZATIONAL ASSISTOR PLAINTIFF ACTIVITIES AND HARMS**

57. Since the founding of its PAVA program in 2002, Plaintiff Mo P&A has advocated for the full participation of individuals with disabilities in the electoral process.

58. Plaintiff Mo P&A educates and provides referrals to individuals with disabilities, including information about the voting rights of people with disabilities and their accessible voting options, such as the option to vote at home.

59. Plaintiff Mo P&A supports individual voters with disabilities by providing assistance with the voter registration and voting processes. Plaintiff Mo P&A engages in voting-related advocacy and outreach, which includes preparing and distributing physical and digital information materials and presenting webinar sessions on topics such as voter registration and empowerment.

60. Plaintiff Mo P&A engages in systemic assistance for voters with disabilities by surveying polling locations to ensure accessibility, organizing voter education and registration drives, and training local election authorities. Mo P&A provides direct assistance to voters with disabilities on Election Day by responding to requests from voters calling into the Election Protection hotline.

61. Plaintiff Mo P&A assists voters with disabilities throughout the State of Missouri.

62. Plaintiff Mo P&A estimates that there are at least 850,000 voters with disabilities that are affected by the agency's PAVA initiatives.

63. Any one of those 850,000 voters would be eligible to receive direct support from Mo P&A on Election Day.

64. Plaintiff Mo P&A's employees, including Staff Attorneys and Advocacy Specialists, assist voters with disabilities in accessing, reading and casting their ballots at the polls, addressing problems that arise during Election Day, and engaging in voter protection and outreach efforts in coordination with other nonprofits.

65. At most times, Plaintiff Mo P&A employs ten Staff Attorneys and thirteen Advocacy Specialists, who are based in or near Kansas City, Saint Louis, Jefferson City, and Springfield. The PAVA coordinator may call upon attorneys and/or advocates at any of these locations to provide direct assistance for voters with disabilities.

66. Plaintiff Mo P&A's voting-related activities are coordinated primarily by Vincent Heitholt, a Staff Attorney based in Saint Louis. Mr. Heitholt directs Plaintiff Mo P&A's voting-related outreach, education, and systemic advocacy initiatives and responds directly to all requests for voting-related assistance from voters with disabilities, organizations serving voters with disabilities, and local election authorities. The requests for assistance received by Plaintiff Mo P&A include accessibility complaints on Election Day from voters across Missouri.

67. Since 2016, Plaintiff Mo P&A's Election Day efforts have included: engaging in direct advocacy with election authorities; surveying polling places for compliance with the access requirements of the Americans with Disabilities Act; accompanying voters with disabilities to polling locations upon request; and providing direct assistance to

14

voters with disabilities or their advocates who call into the Election Protection hotline. Mo P&A fields accessibility and assistance calls to the Election Protection hotline.

68. Plaintiff Mo P&A is a non-profit organization that relies primarily on federally funded grants. Several grants have strict eligibility requirements that applicants must meet before Plaintiff Mo P&A can provide them with advocacy assistance—for example, one grant is reserved for individuals with mental illness ("PAIMI"), and another is reserved for individuals with developmental disabilities ("PADD"). The PAVA grant funds are crucial to the above-noted non-litigation initiatives to promote the full participation of people with any disability in the electoral process.

69. Because of Missouri's voter assistance restrictions, Plaintiff Mo P&A must divert staff time that would typically be available for other federally mandated duties to ensure voting access and assistance for voters with disabilities. Because staff are prevented from assisting multiple voters on Election Day, Plaintiff Mo P&A must seek out additional assistors to support individuals with disabilities in voting or risk failing to meet its PAVA grant priority of ensuring full participation of people with disabilities in the electoral process.

70. Plaintiff Mo P&A provides a myriad of other legal and advocacy resources beyond voting resources to individuals with disabilities in Missouri, including: investigating incidents of abuse, neglect, financial exploitation, and significant violations of individual rights; ensuring equal access to education; and obtaining accommodations in the workplace. When Plaintiff Mo P&A has to divert additional staff time to its voter assistance work, or to locating additional assistors outside of the agency, it comes at the expense of the agency's other federally mandated duties.

71.     Plaintiff VozKC was founded in 2020 to increase civic engagement in the Latino community in Missouri, including providing voter education. The core of Plaintiff VozKC's work takes place in the northeast and west sides of Kansas City, Missouri, where the immigrant and Latino community is concentrated. Plaintiff VozKC provides various education, advocacy, and action resources to address Latino issues in the community it serves. Through public service awareness campaigns and opportunities to meet with candidates for local office at events, such as the "REAL Talk" virtual sessions, Latino voters can discuss issues important to the Latino community.

72.      Plaintiff VozKC hosts educational and advocacy events to advocate for increasing the appointment of Latino and female local and state board members.

73.     Plaintiff VozKC's Get Out the Vote work includes phone banking, door-to-door canvassing, and social media outreach within the immigrant and Latino communities. Plaintiff VozKC's voter education is responsive to the community's needs such as understanding how to register to vote, how to cast a ballot, and explaining the referendum issues on the ballot for local, state, and federal elections. Plaintiff VozKC educates the Latino community about the voting process through outreach events, material dissemination, and social media.

74.     Plaintiff VozKC is a volunteer-based organization, including the leadership staff, who are unpaid. Plaintiff VozKC depends on volunteers to assist with running its daily operations and carrying out its mission, such as event organizing, social media outreach, administrative tasks, and keeping track of important state and local policy initiatives. Currently, Plaintiff VozKC has four leadership staff volunteers who help run the daily operations of the organization.

75. During the 2020 election, Plaintiff VozKC had to rely on social media to provide its voter education information due to having a low number of volunteers available to help with canvassing and other activities. For the 2020 election cycle, Plaintiff VozKC had about 15 volunteers available to help with their Get Out the Vote efforts. This group of volunteers helped register approximately 100 voters, made over 400 phone calls to voters to remind them to vote, helped voters find their polling location, and answered any additional election questions. Where able, Plaintiff VozKC also provided their Get Out the Vote information at churches, grocery stores, and Mexican butcher shops (*carnicerias*) in neighborhoods with large Latino communities. Plaintiff VozKC partnered with different community groups and non-profit organizations serving the Latino community in Kansas City to provide voter education information given the small number of volunteers.

76. The voter assistance restrictions will cause Plaintiff VozKC to divert its limited resources. Plaintiff VozKC's noted programs will lose resources, as well as its voting rights advocacy activities, when Plaintiff VozKC has to divert resources to its voter assistance work because of Missouri's voter assistance restrictions in the upcoming elections.

77. Plaintiff VozKC relies on donations that are used specifically for their programming activities such as public service campaigns, advocacy efforts, and voter education. Volunteers are key to Plaintiff VozKC providing assistance to limited English proficient voters in casting their ballots at the polling place. Because of Missouri's voter assistance restrictions, in order to assist limited English proficient voters in casting their votes at the polling place, Plaintiff VozKC will have to divert their leadership volunteer

17

staff who would normally be dedicated to other activities such as canvassing, phone banking, and other direct work with voters.

78. To comply with the Missouri voter assistance restrictions, VozKC would have to recruit one volunteer for each limited English proficient voter that requires assistance, which is logistically impossible for a volunteer organization. Plaintiff VozKC's volunteers are concerned about potentially facing criminal consequences for assisting more than one voter, other than their immediate family members, during an election.

79. Plaintiffs MO P&A and VozKC are harmed by the voter assistance restrictions contained in Mo. Rev. Stat. § 115.445.3 because they have been and will continue to be forced to divert resources away from other critical tasks to recruit and train, and for MO P&A they also pay for more assistors for voters with disabilities and limited English proficiency than they would if their assistors could assist more than one voter in an election outside of their immediate family.

80. Missouri's voter assistance restrictions contained in Mo. Rev. Stat. § 115.445.3 impede the work of Plaintiffs MO P&A and VozKC to help promote voting access for the communities they serve because it thwarts their missions and forces them to divert resources away from critical tasks in order to recruit, train, and deploy more assistors. It prevents them from organizing efforts to assist voters, informing voters that they can provide voting assistance, and thwarts their mission to inform voters about obtaining voting assistance and of their right to access voting assistance from a person of their choice.

81. Plaintiffs MO P&A and VozKC's assistors are prohibited from assisting more than one person with voting in any election, or risk facing criminal prosecution and penalties if they assist multiple voters in an election.

82. On Election Day, Plaintiffs MO P&A and VozKC will receive requests for assistance from voters. But, because their staff and volunteers can only assist one voter, Plaintiffs MO P&A and VozKC will likely have to turn away voters requesting assistance because they will lack capacity to meet the needs of voters since they could not, as a practical matter, identify and train a new assistor for each and every voter who seeks their help.

83. Plaintiffs MO P&A and VozKC must hire or reassign staff members in order to provide election-related services and seek out additional volunteers and community support to comply with Missouri's voter assistance restrictions.

84. Plaintiffs MO P&A and VozKC are forced to limit mission-critical efforts to educate voters about their right to assistance and notifying voters about Plaintiffs' ability to provide voting assistance because they are limited by Missouri's voter assistance restrictions in providing that assistance. This thwarts their core missions of ensuring voter access for their communities.

85. Without Missouri's voter assistance restrictions, Plaintiffs MO P&A and VozKC would be able to reach and assist more of the populations they serve and provide both election information and continuous services in their other program areas.

86. Missouri's voter assistance restrictions also injure people with disabilities supported by Plaintiff Mo P&A and the limited English proficient population supported by Plaintiff VozKC, who are denied the right to vote using the assistor of their choice.

19

Plaintiff organizations have specialized expertise to provide voting assistance to the population they serve and desire to do so. Because of Missouri's restrictions on assisting multiple voters, Plaintiffs will have to turn away community members who need help voting.

87. The population with disabilities supported by Plaintiff Mo P&A and the limited English proficiency population supported by Plaintiff VozKC must seek out assistance, both to be informed, and to vote. Missouri's voter assistance restrictions prevent Plaintiffs from fulfilling their respective missions of providing information, access and assistance to voters.

88. Missouri's voter assistance restrictions prevent the populations served by Plaintiffs from voting with the assistors they need and want.

89. Securing help in voting from trusted assistors of their choice enables the populations served by Plaintiffs to cast an informed and meaningful vote when they read, mark, and cast their ballots.

**INDIVIDUAL ASSISTOR PLAINTIFF ACTIVITIES AND HARMS**

90. Plaintiff Elizarraraz has several friends who are registered voters in Missouri with limited English proficiency. During the primary and general elections in 2022, she will be available to assist them. If asked, Plaintiff Elizarraraz will assist limited English proficient voters throughout the check-in process; help them obtain their ballot; translate, read, and comprehend their ballot; and assist them in casting their ballot. Plaintiff Elizarraraz is one of the only people in her community who is proficient in English and capable of reading and comprehending election instruction information, polling signs, and a ballot written in English. Many people in Plaintiff Elizarraraz's community are not English proficient and need assistance casting a ballot.

91.     Because of the voter assistance restrictions, Plaintiff Elizarraraz will be able to assist only one voter outside of her immediate family, despite a greater need for assistors from limited English proficient voters in her community.

92.     Plaintiff Elizarraraz's mother is a registered voter in Kansas City, Missouri, and she is limited English-proficient, cannot read or write, and is deaf. Plaintiff Elizarraraz's mother did not vote in the April 5, 2022 municipal elections in Missouri because there was no one to assist her to vote and Plaintiff Elizarraraz was out of town for a work conference.

93.     Plaintiff Abarca has provided voter assistance since 2016 in Kansas City, Missouri. Plaintiff Abarca has helped voters with checking into the polling location; reading, understanding, interpreting, and marking the ballot; and entering and exiting his polling location, which is located on the second floor and only accessible by elevator for voters with physical disabilities.

94.     In August 2016, Plaintiff Abarca's neighbor, a Latino male who is over 65-years-old and who is limited English proficient asked Plaintiff Abarca for help in voting in the local school board election. Plaintiff Abarca assisted his neighbor with reading, interpreting, and comprehending the purpose and meaning of the various elected offices and ballot initiatives. Once the voter was done marking his ballot he was able to turn in his completed ballot.

95.     In November 2016, Plaintiff Abarca was standing outside of the polling place at Holy Cross, Kansas City, Missouri, when a Latino man approached him and asked for his help in casting his vote. Plaintiff Abarca took the voter into the polling location, assisted him with checking in and getting his ballot, walked the voter to the voting booth and

read, interpreted, and explained the various elected positions and ballot initiatives. The voter completed his ballot, cast his ballot, and thanked Plaintiff Abarca for his help.

96. Plaintiff Abarca intends to assist voters obtain, interpret, read, and submit their ballots in Missouri's upcoming Primary and General elections in 2022.

97. Plaintiff Abarca assists individuals who are not part of his immediate family.

98. Because of the voter assistance restrictions, Plaintiff Abarca will be limited to assisting one voter outside of his immediate family, despite a greater need for assistance by voters with limited English proficiency and physical disabilities in his community.

99. If Plaintiff Abarca violates the law, he risks criminal prosecution and penalties.

100. Missouri's voter assistance restrictions prevent the populations that would rely upon individuals like Plaintiffs Elizarraraz and Abarca from voting with the assistors they need and want in order to cast an informed and meaningful vote when they read, mark, and cast their ballots.

**VOTER PLAINTIFF HARMS**

101. Plaintiff Sheinbein is a registered voter and resident of St. Louis County Missouri. Ms. Sheinbein requires an accessible machine with headphones and voice prompts in order to cast a secret ballot.

102. During the April 2022 Municipal Elections in Missouri, Plaintiff Sheinbein obtained assistance from a friend, a volunteer with the League of Women Voters, to gain access to a working accessible machine and headphones. Plaintiff Sheinbein required assistance to be directed to the voting station, having the machine set up, having headphones plugged in, and to be handed headphones for use. Without this assistance, Plaintiff Sheinbein would not have been able to cast a secret ballot during the April 2022 elections.

103. During a recent previous election, when voters had to cast ballots only at their precinct in St. Louis County, Plaintiff Sheinbein received assistance from her assistor of choice to both read the ballot to Plaintiff Sheinbein and mark her ballot choices when the accessible machine at her precinct was not working. If she had not had this assistance, she would not have been able to cast a ballot.

104. Plaintiff Sheinbein wishes to continue to work with her chosen assistor - a volunteer with the League of Women Voters who works to advance the League's mission of ensuring voters can vote - in future elections in order to cast a secret ballot, assistance, which may include ensuring an accessible machine is available and properly set up, being directed to the voting station, plugging in the headphones, being provided headphones in her hands, and, if no accessible machine can be made available, assistance reading and marking the ballot on her behalf.

105. It is Plaintiff Sheinbein's desire to cast a secret ballot, which she can do with assistance of an assistor taking Plaintiff Sheinbein to the voting station, ensuring the machine is set up and functioning, plugging in the headphones, ensuring the volume on the voice prompts are working, and handing her headphones to use. But she has experienced multiple occasions when the accessible machine is non-functioning, or lacks headphones, in which case she needs her assistor of choice to read the ballot and mark her choices on her behalf.

106. The voting restrictions prohibit Plaintiff Sheinbein from working with her friend and chosen assistor if this person has helped someone else, and exposes her assistor to criminal prosecution and penalties for assisting more than one person.

107. Securing help in voting from a trusted assistor of her choice allows Plaintiff Sheinbein to cast an informed, meaningful, trusted and secret vote when she reads, marks, and casts her ballot.

108. Missouri's voter assistance provisions thwart the purpose and intent of the VRA's mandate to ensure accessible voting to those who need assistance.

## COUNT I

*Missouri's voter assistance restrictions violate the Supremacy Clause of the U.S. Constitution.*

109. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth here.

110. The U.S. Constitution's Supremacy Clause provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

111. Provisions contained in Mo. Rev. Stat. §§ 115.445.3, 115.635.8, 115.115.5, 115.447.2(2), and 115.291.1 conflict and interfere with Section 208 of the VRA, 52 U.S.C. § 10508 and thus violate the Supremacy Clause.

112. Defendants' denial of necessary assistance to voters from the assistors of their choice, as provided for in Section 208 of the VRA, violates the Supremacy Clause and harms Plaintiffs.

## COUNT II

*Missouri's voter assistance restrictions violate Section 208 of the VRA*

24

113. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth here.

114. Section 208 of the VRA provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

115. Section 208 establishes the right of a voter with disabilities or a limited English proficient voter to bring a person of their choice to assist them in voting even if that assistor has assisted another voter.

116. Provisions in Mo. Rev. Stat. §§ 115.445.3, 115.635.8, 115.115.5, 115.447.2(2), and 115.291.1 violate Section 208 of the VRA 52 U.S.C. § 10508, by denying voters, including people with disabilities supported by Plaintiff Mo P&A and the limited English proficient population supported by Plaintiff VozKC, the right to use assistors of their choice to vote when those assistors have already helped another voter.

117. Defendants' denial of necessary assistance to voters from the assistors of their choice violates Section 208 of the VRA and harms Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

1. A declaratory judgment that the voter assistance restrictions in Mo. Rev. Stat. § 115.445.3 are unconstitutional and illegal because they violate the U.S. Constitution's Supremacy Clause and Section 208 of the Voting Rights Act;

2. An injunction prohibiting Defendants and their officials, employees, and agents from implementing or enforcing the voter assistance restrictions in Mo. Rev. Stat.

§ 115.445.3;

3.　An injunction requiring Defendants to develop and implement a remedial plan to ensure that voters are permitted to use assistance from persons of their choice when they cast their ballots, in compliance with Section 208 of the VRA;

4.　An order awarding Plaintiffs' costs and attorney's fees under 42 U.S.C. § 1988, 52 U.S.C. § 10310(e), and any other applicable law; and

5.　Such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Molly E. Carney
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Molly E. Carney, #70570MO
Emily Lazaroff, #73811MO
ACLU of Missouri Foundation
906 Olive Street, Ste. 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org
mcarney@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 West 34th Street, Ste. 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
Fax: (314) 652-3112
gwilcox@aclu-mo.org

MISSOURI VOTER PROTECTION
COALITION
Denise D. Lieberman, #47013MO
6047 Waterman Blvd.
St. Louis, Missouri 63112
(314) 780-1833

denise@movpc.org

MEXICAN AMERICAN LEGAL
DEFENSE AND
EDUCATIONAL FUND

Griselda Vega Samuel*
IL State Bar No. 6284538
Susana Sandoval Vargas*
IL State Bar No. 6333298
11 E. Adams, Suite 700
Chicago, Illinois 60603
Phone: (312) 427-0701
Facsimile: (312) 588-0782
Email: gvegasamuel@maldef.org
Email: ssandovalvargas@maldef.org
*Pro hac vice forthcoming

MISSOURI PROTECTION AND
ADVOCACY SERVICES
Susan K. Eckles, MoBar #38641
Vincent K. Heitholt, MoBar # 68129
P.O. Box 140195
St. Louis, MO  63114
Email:  susan.eckles@mo-pa.org
Email:  vincent.heitholt@mo-pa.org
Phone:  314-256-9611 and 314-256-9591
Facsimile:  573-893-4231


***Attorneys for Plaintiffs***